# In the United States Court of Federal Claims

|  |  |
|---|---|
| HENRY DOIBAN, | |
| Plaintiff, | No. 24-cv-809 |
| v. | Filed: October 15, 2024 |
| THE UNITED STATES, | |
| Defendant. | |

*Henry Doiban*, Brooklyn, New York, Plaintiff, appearing *pro se.*

*Elinor J. Kim*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., appearing for Defendant.

## MEMORANDUM AND ORDER

On May 21, 2024, Plaintiff Henry Doiban,[1] appearing *pro se*, filed a Complaint alleging a myriad of claims purportedly based on "unlawful actions" perpetrated by "United States agencies." Complaint (ECF No. 1) (Complaint or Compl.) at 3.[2]  Generally, Plaintiff's claims arise from four separate incidents: (1) the foreclosure of Plaintiff's home in New York, (2) an administrative

---

[1] Plaintiff appears to bring this suit as the executor of his own trust.  *See* Compl. at 1 (styling caption as "[i]n Proper Person . . . Henry Doiban executor / beneficiary"); *id.* at 6–7; Notice to court of Claimants Executor Letter for ORDER of Judgement Entry (ECF No. 9) (Executor Letter) at 1 (describing Plaintiff as "Executor of the estate public trust for entity HENRY DOIBAN").  A trust cannot be represented *pro se*. Rules of the United States Court of Federal Claims (Rule(s)) 83.1(a)(3); *see Williams v. United States*, 482 F. App'x 580, 582 (Fed. Cir. 2012).  Therefore, the Court liberally construes Plaintiff's statements as an assertion of sovereign citizenship on behalf of himself, Henry Doiban, seeking recovery in his personal capacity.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A document filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'").

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

proceeding in Oregon that revoked business licenses from Plaintiff, (3) an arrest of Plaintiff in Kentucky for possession of illegal drugs, and (4) a seizure of money by the Port of Seattle Police. *See generally* Compl.; Compl. Ex. 1 (ECF No. 1-1) (Compl. Ex. 1) at 1–2.[3]

Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1), contending that the Court lacks subject matter jurisdiction over Plaintiff's claims. Defendant's Motion to Dismiss (ECF No. 6) (Motion or Mot.) at 1. For the reasons discussed below, Defendant's Motion is **GRANTED**.

## PROCEDURAL BACKGROUND

On May 21, 2024, Plaintiff filed his Complaint asserting claims arising under a variety of constitutional provisions, statutes, regulations, and other authorities that stemmed from four separate incidents. *See generally* Compl.; Compl. Ex. 1. Defendant filed a Motion to Dismiss on July 25, 2024, contending that this Court lacks jurisdiction under Rule 12(b)(1). *See* Mot. at 1. Plaintiff responded to the Motion on July 31, 2024. Plaintiff's Response to Defendant's Motion to Dismiss (ECF No. 7) (Resp.).

On August 9, 2024, Plaintiff attempted to file a defective pleading, which was filed on August 13, 2024 by leave of the Court as a supplement to Plaintiff's Response to Defendant's Motion to Dismiss. *See* Order, dated Aug. 13, 2024 (ECF No. 8); Executor Letter. The next day, on August 14, 2024, Defendant filed its Reply in Support of its Motion to Dismiss and Plaintiff attempted to file another defective pleading that contained unredacted, private information. Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (ECF No. 10); Order, dated Aug. 15, 2024 (ECF No. 11) (August 15, 2024 Order). The Court returned the defective

---

[3] Exhibit 1 to Plaintiff's Complaint begins as a continuation of the relief sought. *See* Compl. at 12 (noting that relief is "Continued [at next page]," which matches Plaintiff's pagination to begin exhibit one). Accordingly, the Court cites both docket entries throughout this Memorandum and Order.

filing to Plaintiff with leave to refile as a Sur-Reply to Defendant's Motion to Dismiss once Plaintiff removed the private information. August 15, 2024 Order. On August 19, 2024, Plaintiff refiled his corrected Sur-Reply. Plaintiffs Notice of Supplement to Plaintiffs Response to Defendant's Motion to Dismiss (ECF No. 13) (Sur-Reply).

The same day, on August 19, 2024, the Court granted leave for Plaintiff to file another defective pleading, which the Clerk of Court's office had received on August 15, 2024. Order, dated Aug. 19, 2024 (ECF No. 12); Plaintiffs Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (ECF No. 14). On August 22, 2024, Plaintiff attempted to file another defective pleading, which the Court rejected. Order, dated Aug. 22, 2024 (ECF No. 15).

On September 3, 2024, after briefing was complete on Defendant's Motion, Plaintiff filed a Motion for Declaratory Judgment. ECF No. 16. The Court stayed briefing on Plaintiff's Motion for Declaratory Judgment pending resolution of the present Motion. *See* Order, dated Sept. 4, 2024 (ECF No. 17) (Order Staying Briefing). On September 6, 2024, following the Order Staying Briefing, Plaintiff attempted to file a defective pleading in support of his Motion for Declaratory Judgment, which was filed by leave of the Court on September 9, 2024. *See* Order, dated Sept. 9, 2024 (ECF No. 18); Notice of Executory Order Declaratory Judgment Supplement Rule 60 (ECF No. 19).

## **FACTUAL BACKGROUND**

Plaintiff alleges a bevy of constitutional and statutory claims. Although the specifics are at times difficult to discern, most allegations appear to stem from four unrelated occurrences: (1) "[h]ome mortgage [f]raud" related to the foreclosure of a New York home, Compl. Ex. 1 at 1, 4–6, 19–30; (2) "administrative fraud" following "[f]orfeiture of licenses by color of law contested hearings" by the Oregon Liquor and Cannabis Commission, *see id.* at 1–2, 7, 31–33; (3) an arrest

3

in Kentucky for possession of illegal drugs and seizure of Plaintiff's property subsequent to that arrest, *see id.* at 2, 8, 38–42; and (4) the seizure of $43,950 by the Port of Seattle Police, *see id.* at 2, 9, 43–44.  Plaintiff seeks monetary redress, including pain and suffering damages related to these incidents.  *Id.* at 1–2.  Additionally, Plaintiff seeks "[d]amages for pain and suffering by the actions of the[] 'STATE'."  *id.* at 2.  This pain and suffering claim, Plaintiff asserts, stems from "sweet equity . . . and over 40 years of physical, mental and psychological damages claimed."  Resp. at 1.

Plaintiff points to multiple constitutional, statutory, regulatory, and miscellaneous other authorities to invoke jurisdiction.  These include a description of this Court and its jurisdiction under the Tucker Act; Article I, Section 8, Clause 17 of the Constitution; Article III, Section 1 of the Constitution; 28 U.S.C. § 132; 15 U.S.C. § 1635; the District of Columbia Organic Act of 1871; 27 C.F.R. § 72.11; "District of Columbia Circuit D-U-N-S number"; the definition of "remedy" from Black's Law Dictionary; and a reference to "[t]he Judgment Fund."[4]  *See* Compl. at 1–2.

As noted, Plaintiff's allegations largely stem from four separate incidents, which are more specifically described below.  *First*, Plaintiff alleges "[h]ome mortgage [f]raud" for a "[h]ome purchased in 2004" on Rathbun Avenue in Staten Island.  Compl. Ex. 1 at 1, 19–30.  Plaintiff asserts "tax lien title transfer fraud, . . . home sale forced closing, title company fraud and $800,000[] [e]quity stolen from sale for fraudulent theft of equity by NYS DOF and other NY

---

[4] Plaintiff cites additional constitutional provisions, statutes, and authorities he claims invoke this Court's jurisdiction along with the facts of the four alleged incidents.  *See* Compl. at 3–4; Compl. Ex. 1 at 1–2.  Those are discussed below with the specific alleged incidents.

agencies."[5]  *Id.* at 1.  Plaintiff attaches a filing, "Judgment of Foreclosure and Sale" for a property

in Staten Island New York with case number 1353867/2013 in the Richmond County division of

the New York Supreme Court.  *Id.* at 1, 19–30.  The pleading lists Plaintiff as a defendant in the

foreclosure proceedings.  *Id.* at 19.  Plaintiff seeks reimbursement of $920,000 in losses from the

mortgage fraud, including $800,000 in equity.  *Id.* at 1.  Plaintiff also asserts that he paid two

attorneys for ten years related to the New York foreclosure.  *Id.*; *see also id.* at 3–5 (noting invoices

and payments to attorneys).

     *Second*, Plaintiff alleges that the forfeiture of certain Oregon business licenses through

state administrative proceedings amounts to "administrative fraud" by "US agenc[ies]" acting

under "color of law."  *Id.* at 1–2.  Plaintiff also claims that at least one of his state business licenses

was fraudulently transferred.  *Id.* at 2.  Plaintiff references seven business licenses and attaches a

document from an administrative proceeding before the Office of Administrative Hearings for the

Oregon Liquor and Cannabis Commission.  *Id.* at 1–2, 31–37.  The hearing document lists Henry

Doiban as a member of Integrity Management, LLC, which appears to be the holder of the relevant

licenses.  *Id.* at 31.  Plaintiff requests $1,830,000 under this claim, which includes $150,000 for

each of the seven licenses, $80,000 in legal costs, and $700,000 from his "[i]nvestment into

businesses of forfeited licenses," which includes "[e]quipment, build outs, business furnishings,

inventory loss, etc."  *Id.* at 1.

---

[5] Plaintiff does not define NYS DOF or specify which New York agencies he brings these claims against.  *See* Compl. Ex. 1 at 1.  "NYS DOF" may refer to the New York State Department of Taxation and Finance, or the New York City Department of Finance.  *See, e.g.*, N.Y. STATE DEP'T OF TAX'N & FIN., https://www.tax.ny.gov/ (last visited Oct. 15, 2024); N.Y. CITY DEP'T OF FIN., https://www.nyc.gov/site/finance/index.page (last visited Oct. 15, 2024).  Regardless, both are state or local government agencies.

*Third*, Plaintiff seeks redress for violation and deprivation of his constitutional and statutory rights by the "US Agency COMMONWEALTH OF KENTUCKY LYON COUNTY" stemming from an arrest related to illegal drugs. *Id.* at 2, 38–41. On May 4, 2023, after stopping Plaintiff for an improper vehicle registration plate, Kentucky police "located a large amount of US currency, 3 gold bars[,] over 4 grams of cocaine, marijuana, MDMA and adderall" in Plaintiff's vehicle. *Id.* at 38. Police seized these items and arrested Plaintiff. *Id.* On October 6, 2023, a grand jury indicted Plaintiff on five counts stemming from the arrest. *Id.* at 40–41. Plaintiff's filings do not indicate the outcome of his criminal charges, but according to Plaintiff the Commonwealth of Kentucky did not return the seized items. *See id.* at 2 (requesting compensation for "[c]ash" and "2 one ounce gold bars"); Compl. at 6 (same).

Along with the facts of the Kentucky arrest, Plaintiff asserts a barrage of constitutional rights, federal statutes, state statutes, and proposed statutes that were allegedly violated. Compl. Ex. 1 at 2 (referencing deprivation of rights "under the US Constitution[] specifically the bill of right's [sic] and US Code specifically title 18 and others listed"). More specifically, Plaintiff cites the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, the Ex Post Facto clause of Article 1 of the Constitution, Section 1-201 of the Uniform Probate Code, Kentucky Revised Statute Section 418.005, and over twelve federal statutes across five chapters of the United States Code. Compl. at 3–4. The federal statutes include:

    12 USC § 1821 - Insurance Funds
    15 USC § 77ww[w] - Liability for misleading statements
    15 USC§ 77xxx - Unlawful representations
    18 USC 8 "Bank Bonds" si [sic] "Currency"
    18 USC § 241 Conspiracy Against Rights
    18 USC§ 242 Deprivation of Rights Under Color of Law
    18 USC 245(b)(2) Protected Activities
    18 USC 514 "Fictitious Obligation" prohibited
    18 USC 891-894 Extortionate Credit Transactions
    18 USC 31[14] Return of seized property

22 USC § 611 "Foreign Relations and Intercourse"
33 USC§ 2715 - Subrogation U.S. Code

Compl. at 4.[6]  In later filings, Plaintiff cites the following additional statutes along with those cited

above:  11 U.S.C. § 727, 15 U.S.C. § 1635, 18 U.S.C. § 872, 28 U.S.C. § 2671, 29 U.S.C. § 1109,

and 31 U.S.C. § 3130.[7]  Sur-Reply at 7

Plaintiff requests damages totaling $84,000 related to the Kentucky arrest.  Compl. Ex. 1

at 2; Executor Letter at 5 (listing total for fines in fee schedule and for specific damages from each

claim).  This includes $47,000 for the cash and gold bars allegedly seized; $5,000 for Plaintiff's

bail bond; $3,000 for purported cash and travel expenses; and $25,000 for an "[i]llegal

misrepresentation by foreign agent BAR (British Accreditation Registrar)."[8]  Compl. Ex. 1 at 2.

Plaintiff also requests that this court "[i]nstruct Kentucky Attorney General to Order [Lyon County

Kentucky] to dismiss all charges with prejudice and execute the instructions provided by my

executor letter."  *Id.*

Further, in his Executory Letter, for the first time, Plaintiff attaches a chart of damages,

styled as a "Fee Schedule," which appears related to the Kentucky arrest.  Executor Letter at 4–5.

---

[6] Plaintiff cites 15 U.S.C. § 77ww, which does not exist.  The Court construes this as a citation to 15 U.S.C. § 77www, which is entitled "Liability for misleading statements," and matches the name of statute Plaintiff includes in his filing.  *See* Compl. at 4.  Plaintiff references 18 U.S.C. § 3141 in his Complaint as entitled "Return of seized property."  *Id.*  However, the provision entitled "return of seized property" appears at 18 U.S.C. § 3114.  Plaintiff also cites 18 U.S.C. § 3114 in his Response.  Resp. at 2.  Therefore, the Court construes Plaintiff's reference to 18 U.S.C. § 3141 as 18 U.S.C. § 3114.

[7] Plaintiff did not cite these statutes in his Complaint but asserted them in a later filing.  *See* Sur-Reply at 7.  As such, these claims—and other claims added in subsequent filings—are not properly before the Court.  *See Kimble v. United States*, 991 F.3d 1238, 1244 (Fed. Cir. 2021).  As discussed further *infra*, even if considered this Court lacks jurisdiction over Plaintiff's claims.

[8] The Court notes that while Plaintiff's itemized damages related to the Kentucky arrest total $80,000, Plaintiff requests $84,000.

The fee schedule includes thirty-two "fines" that total $6.6 million in damages.  *Id.*  Plaintiff includes a second fee schedule as Exhibit Four to the Executor Letter that includes 65 fines totaling $14,239,500.  Executor Letter Ex. 4 at 66–68.  All 32 claims from the Executor Letter are included in Exhibit Four to the Executor Letter.  *Compare* Executor Letter at 4–5, *with* Executor Letter Ex. 4 at 66–68.

The fee schedule indicates that the "damages" for these 65 items "in part, were determined BY THE GOVERNMENT ITSELF," that immunity is invalid under 42 U.S.C. § 1983 and other statutes, and that these "[v]iolations of law are legally unassailable due to precedents (violations of law) established by court cases."  Executor Letter at 66, 68.  These appear to mostly relate to Plaintiff's Kentucky arrest because the fines allege constitutional violations related to arrest, seizure, trial, and imprisonment, which Plaintiff only alleges in his Kentucky claim.  *See id.* at 4–5 (including fines for "charges DENIED PROPER WARRANT(S)," "charge ARMED VIOLATION OF DUE PROCESS," "DENIED PROVISIONS IN THE CONSTITUTION," and "UNLAWFUL INCARCERATION").  Further, Plaintiff's Kentucky arrest claim alleged "[i]llegal misrepresentation by foreign agent BAR" and the fee schedule includes a fine for "ACTING AS AGENTS OF FOREIGN PRINCIPLES" [sic].  Compl. Ex. 1 at 2; Executor Letter at 5.  As the fee schedule claims appear to stem from the actions of Kentucky police, prosecutors, or other state actors, the Court construes them as such.

*Fourth*, Plaintiff brings a claim for an "[u]nlawful seizure of property by PORT POLICE OF SEATTLE AIRPORT."  Compl. Ex. 1 at 2.  Plaintiff alleges that the Port of Seattle Police seized $43,950 "from MARIAH ALLIANO" on February 15, 2022.  *Id.* at 2, 43–44.  In support, Plaintiff attaches a "Notice of Hearing" in "Administrative Forfeiture Proceedings for the Port of Seattle Police Department" under Section 69.50.501(1)(g) of the Revised Code of Washington.

*Id.* at 43–44 (citing WASH. REV. CODE § 69.50.501(1)(g)).  The notice of hearing listed Plaintiff as a party to the administrative proceeding and provided a process for adjudicating the seizure.  *Id.* at 43–44.  For this claim, Plaintiff seeks the return of the alleged value lost, $43,950.  *Id.* at 2.

*Finally*, beyond these four instances, Plaintiff makes passing references to copyright claims, identity theft, breach of contracts, breach of fiduciary responsibilities, breach of trust, and trust fraud.  *See* Compl. at 3.  Plaintiff also makes repeated references to trusts, and, as a final remedy sought, seeks to appoint the Court and Clerk of Court as fiduciary trustees to his personal estate.  *See id.* at 6; Executor Letter at 1; Sur-Reply at 3–4.

## APPLICABLE LEGAL STANDARDS

As the primary source of jurisdiction for the United States Court of Federal Claims, the Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  The Tucker Act serves as a waiver of sovereign immunity for "certain claims for monetary relief against the United States," but it does not create a right to relief itself.  *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014); *see United States v. Mitchell*, 463 U.S. 206, 212, 218 (1983).

Instead, to establish a right of relief under the Tucker Act, "plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citing *Mitchell*, 463 U.S. at 216); *see Todd v. United States*, 386 F.3d 1091, 1093–94 (Fed. Cir. 2004) (citing *United States v. Testan*, 424 U.S. 392, 398 (1976)).  The constitutional, statutory, or regulatory provision must be "fairly . . . interpreted as mandating compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 400

9

(internal quotations omitted) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)).  Put differently, it must "expressly create[] a substantive right enforceable against the federal government for money damages." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (citing *Testan*, 424 U.S. at 398).  Accordingly, this Court's limited subject matter jurisdiction does not extend to "every claim invoking the Constitution, a federal statute, or a regulation." *Mitchell*, 463 U.S. at 216.

While this Court has jurisdiction over monetary claims against the United States, it lacks jurisdiction over claims against private parties, state actors, or federal officials.  *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").  A "[p]laintiff cannot establish jurisdiction in this Court by merely naming the United States as defendant where the true nature of her allegations are lodged against a private party." *Richardson v. United States*, No. 23-1744, 2024 WL 1193418, at *3 (Fed. Cl. Mar. 20, 2024); *Beauvais v. United States*, No. 2024-1353, 2024 WL 2860170, at *1 (Fed. Cir. June 6, 2024) ("Although [plaintiff's] complaint lists the United States as the defendant, [she] only makes allegations about her two prior employers. . . . Here, the suit as to these two private companies is plainly beyond the jurisdiction of the Claims Court."); *Cooper v. United States*, 771 F. App'x 997, 1000 (Fed. Cir. 2019) (internal citations omitted) (quoting *Brazos Elec. Power Co-op., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998)) ("Although the complaint names the United States as the sole defendant in the case caption, 'we customarily look to the substance of the pleadings rather than their form' to determine whether jurisdiction exists."); *Lisa Richardson-Henderson Tr. v. United*

*States*, No. 23-cv-1896, 2024 WL 3688527, at \*7 (Fed. Cl. Aug. 6, 2024) ("[S]imply listing the United States as the defendant in the caption of a Complaint is insufficient to invoke this Court's jurisdiction."); *Fullard v. United States*, 78 Fed. Cl. 294, 300 (2007) ("A plaintiff cannot invoke Tucker Act jurisdiction by merely naming the United States as the defendant in the caption of the complaint but failing to assert any substantive claims against the federal government.").

It is axiomatic that the Court of Federal Claims lacks jurisdiction to review the decisions of state or federal courts. *Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011). Moreover, the "Court of Federal Claims cannot entertain a taking claim that requires the court to 'scrutinize the actions of' another tribunal." *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (quoting *Allustiarte v. United States*, 256 F.3d 1349, 1352 (Fed. Cir. 2001)). Indeed, "whether in state or federal court," a plaintiff's "recourse concerning a prior adverse decision is 'the statutorily defined appellate process.'" *Nickerson-Malpher v. United States*, No. 17-612C, 2017 WL 2303516, at \*6 (Fed. Cl. May 26, 2017) (quoting *Shinnecock Indian Nation v. United States*, 782 F.3d 1345, 1353 (Fed. Cir. 2015)).

The Court of Federal Claims also lacks "jurisdiction over criminal matters generally." *Jones*, 440 F. App'x at 918. It is well established that this Court lacks jurisdiction over claims of criminal conduct and "has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code." *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994). The Court also lacks jurisdiction over tort claims. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks . . . jurisdiction to entertain tort claims."). Further, the Court lacks jurisdiction over claims based on

sovereign citizen-type arguments.  *See Walby v. United States*, 957 F.3d 1295, 1297, 1302 (Fed. Cir. 2020); *Potter v. United States*, 161 Fed. Cl. 24, 29 (2022).[9]

While this Court generally has "jurisdiction over express and implied-in-fact contract claims against the United States," it lacks jurisdiction over such claims where a plaintiff fails to plausibly allege such a contract.  *Stephens v. United States*, 165 Fed. Cl. 341, 347 (2023) (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990)); *see also Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("To show jurisdiction in the Court of Federal Claims, [plaintiff] must show that either an express or implied-in-fact contract underlies its claim."); *Starrett v. United States*, No. 2022-1555, 2023 WL 152827, at *4 (Fed. Cir. Jan. 11, 2023) ("Because . . . [plaintiff] does not plausibly allege the existence of an express or implied contract with the United States, the Claims Court lacked subject-matter jurisdiction over the case and correctly dismissed [plaintiff's] complaint.").  It is also well-established that constitutional provisions are not offers to a contract.  *See Clawson v. United States*, 24 Cl. Ct. 366, 370 (1991) (citing *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985)) ("Where rights and obligations are prescribed by statute and regulation rather than determined through the mechanics of a bilateral exchange, there is no contract . . . ."); *Taylor v. United States*, 113 Fed. Cl. 171, 173 (2013) (noting that the Constitution cannot be a valid contract between a private citizen and the United States).

---

[9] Sovereign citizens often "attempt to convince courts that their status as sovereign citizens differs from the status of the fictional individuals identified by their birth certificates or their social security numbers."  *Potter*, 161 Fed. Cl. at 28.  Sovereign citizens often advance a theory that "all Citizens were 'pledged' as collateral for the national debt," thereby creating a "fictional 'public' person" in whose name the alleged trust is held.  *See id.* (citing Jessica K. Phillips, *Not All Pro Se Litigants Are Created Equally: Examining the Need for New Pro Se Litigant Classifications Through the Lens of the Sovereign Citizen Movement*, 29 GEO. J. LEGAL ETHICS 1221, 1226 (2016)).

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court "accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Express Lines*, 739 F.3d at 692; *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). In considering a motion to dismiss, this Court must liberally construe a complaint filed by a *pro se* litigant because *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle,* 429 U.S. at 106). *Pro se* plaintiffs must still, however, demonstrate this Court's jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019). While this Court allows ambiguities in *pro se* filings, it "does not excuse . . . failures" on the merits. *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). To that end, regardless of a plaintiff's *pro se* status, this Court must dismiss claims outside its limited subject matter jurisdiction. *See* Rule 12(h)(3).

## **DISCUSSION**

Plaintiff's claims fall outside of this Court's jurisdiction under even the most liberal construction. Plaintiff's claims must be dismissed because (1) Plaintiff fails to invoke a money-mandating statute or constitutional provision; (2) the United States is not the proper defendant for Plaintiff's claims and, even if it were, Plaintiff's claims do not involve a money-mandating statute or an implied-in-fact contract; and (3) this Court lacks jurisdiction to hear any of Plaintiff's remaining, miscellaneous claims.

I.       **Plaintiff's Complaint Fails to Allege a Separate Source of Substantive Law that Creates the Right to Money Damages.**

Plaintiff references a litany of constitutional provisions, statutes, and legal treatises to assert jurisdiction.   Compl. at 1–2 (jurisdiction section).   In the jurisdiction section of his Complaint, Plaintiff describes this Court and its jurisdiction, accurately noting that this Court has jurisdiction "to render a money judgment on any claim against the United States founded on the Constitution, a federal statute, a federal regulation, an express or implied-in-fact contract with the United States, or any other claim for damages not sounding in tort."   *Compare id.* at 1, *with* 28 U.S.C. § 1491.   Accordingly, the Court construes the Complaint as an invocation of the Tucker Act.

However, invocation of the Tucker Act alone does not afford this Court with jurisdiction. *Mitchell*, 463 U.S. at 216.   None of the authorities cited by Plaintiff carries his jurisdictional burden to identify a "separate source of substantive law that creates the right to money damages," such as a money-mandating constitutional, statutory, or regulatory provision, for jurisdiction to vest in the Court.   *Fisher*, 402 F.3d at 1172; *see also Mitchell*, 463 U.S. at 216; *Reynolds*, 846 F.2d at 748.

To begin, Plaintiff's constitutional citations do not confer jurisdiction.   *See* Compl. at 1–2. Plaintiff cites Article I, Section 8, Clause 17 of the Constitution; Article III, Section 1 of the Constitution; and 28 U.S.C. § 132.   *Id.*   As Defendant's Motion to Dismiss notes, these provisions are not money-mandating sources of law.   Mot. at 3–4.   Article I, Section 8, Clause 17 vests Congress with authority over the District of Columbia and other federal land, such as military bases.   U.S. CONST. art. I, § 8, cl. 17.   Article III, Section 1 establishes the judicial branch itself, while 28 U.S.C. § 132 provides for the creation of district courts, not for this Court.   U.S. CONST. art. III, § 1; 28 U.S.C. § 132.   Indeed, "[o]ther than the guarantee that federal judges will not have their compensation diminished while in office, . . . no money mandate can be found" in Article III,

Section 1.  *Haddad v. United States*, No. 15-1418C, 2017 WL 398353, at *3 (Fed. Cl. Jan. 30, 2017) (citing *United States v. Hatter*, 532 U.S. 557, 560–61 (2001)).   In contrast, Plaintiff's Complaint does not reference or relate to the portion of Article III, Section 1 that provides that the salary of judges shall not be diminished nor is Plaintiff a judge to whom this provision would apply.  *See* Compl. at 4.  In sum, nothing in the constitutional provisions cited by Plaintiff can be read to "expressly create[] a substantive right enforceable against the federal government for money damages."  *See LeBlanc*, 50 F.3d at 1028 (citing *Testan*, 424 U.S. at 398).  As none of the constitutional provisions cited by Plaintiff create a right to money damages, those provisions are not a basis to confer jurisdiction on this Court.

Plaintiff's other statutory citations also fail to confer jurisdiction.  Plaintiff appears to cite the District of Columbia Organic Act of 1871, which established a territorial government over the District of Columbia.  Compl. at 2 (citing "CR Feb. 21, 1871.  Vol xvii. p. 16 District of Columbia constituted a body corporate for municipal purposes").  This statute, which established a local government in the Nation's capital, is entirely unrelated to any facts plead and fails to "expressly create[] a substantive right enforceable against the federal government for money damages."  *See LeBlanc*, 50 F.3d at 1028 (citing *Testan*, 424 U.S. at 398).  Plaintiff also points to 15 U.S.C. § 1635, a provision of the Truth in Lending Act.  Compl. at 2; Sur-Reply at 7.  However, the "Truth in Lending Act . . . create[s] no private right of action enforceable against the federal government for money damages."  *Wilson v. United States*, 404 F. App'x 499, 501 (Fed. Cir. 2010) (citing *LeBlanc*, 50 F.3d at 1028).  As neither the District of Columbia Organic Act of 1871 nor the Truth in Lending Act create a substantive right to money damages, this Court similarly lacks jurisdiction over these claims.

Nor do Plaintiff's miscellaneous other authorities confer jurisdiction.  For example, Plaintiff cites a Bureau of Alcohol Tobacco and Firearms (ATF) regulation, 27 C.F.R. § 72.11. Compl. at 2; Sur-Reply at 28.  This appears to be the invocation of a "facially incorrect 'crime as contract'" legal theory that "all crimes are commercial in nature," which has been rejected by this Court and others.[10]  *See, e.g.*, *Harris*, 2009 WL 2700207, at *1 n.1 (first citing *Monroe*, 2007 WL 2359833; and then citing *United States v. Sandoval*, 365 F. Supp. 2d 319 (E.D.N.Y. 2005)). Moreover, 27 C.F.R. § 72.11 is a definitional section of a regulation related to property seized by the ATF that does not sweepingly declare that all crimes are commercial; it is not money-mandating.  27 C.F.R. § 72.11.  Nor does Plaintiff's reliance on the "District of Columbia Circuit D-U-N-S number," the definition of "remedy" from Black's Law Dictionary, or a citation-free reference to "[t]he Judgment Fund" confer jurisdiction.  Compl. at 2.  These authorities are not money-mandating statutes that provide this Court with jurisdiction.  *See Testan*, 424 U.S. at 400.

---

[10] Plaintiff's citations to the Uniform Commercial Code (UCC) appear related to this "crime as contract" theory, which seeks to construe criminal proceedings as an implied contract between a criminal defendant and the Government.  *See* Compl. at 10; Resp. at 2, 5; *Harris v. United States*, No. 09-154C, 2009 WL 2700207,  at *1 n.1 (Fed. Cl. Aug. 26, 2009) (noting that plaintiff's criminal proceedings "did not constitute an 'informal contract' and did not give plaintiff any rights under the [UCC].").  To the extent that Plaintiff cites the UCC in relation to the crime as contract theory or his Kentucky arrest, arguing that the arrest constituted a contract, both this theory and reliance on the UCC fail as a matter of law.  *See Ackerman v. United States*, 107 Fed. Cl. 612, 615 (2012); *Harris*, 2009 WL 2700207, at *4 (emphasis in original) ("Plaintiff's criminal conviction is *not* governed in any way by the Uniform Commercial Code . . . ."); *see also Mikolajczyk v. United States*, 172 Fed. Cl. 15, 18 (2024) (citing *Clark v. United States*, 116 F. App'x 278, 279 (Fed. Cir. 2004)) ("This court lacks jurisdiction over claims for damages based on the Uniform Commercial Code.").

Finally, this claim may be based in the sovereign citizen theory, which, as discussed below, this Court lacks jurisdiction to hear.  *See infra* Section III.A; *see also Monroe v. Beard*, No. 05-4937, 2007 WL 2359833, at *18 & nn.14–15 (E.D. Pa. Aug. 16, 2007) (noting that plaintiffs asserting crime is commercial theory "describe themselves using the language of redemption theory and claim that they are imprisoned for debts and not the commission of crimes").

In response to the Government's argument that Plaintiff has failed to cite any money-mandating statutes, Plaintiff points to two statutes in his Sur-Reply to support his opposition to the Government's motion to dismiss.  Sur-Reply at 17–22 (citing 19 U.S.C. § 1619 and 42 U.S.C. § 18071).  First, Plaintiff raises 19 U.S.C. § 1619 to contend this Court has jurisdiction here.  *Id.* at 17–22; *see also id.* at 18 (noting that the "[m]oney mandating statute required for subject matter jurisdiction . . . was successfully overcome by federal statute 19 U.S.C. Sec. 1619").  Like many of Plaintiff's other contentions, such a claim is not properly before the Court because it was first raised in Plaintiff's Response.  *Kimble*, 991 F.3d at 1244.  Even if considered, however, this Court lacks jurisdiction over the claim.

Section 1619 provides that "the Secretary may award and pay" a person who "detects and seizes [property] subject to seizure and forfeiture under customs laws[,]" or provides information regarding "any fraud upon the customs revenue, or . . . any violation of the customs laws" if the seizure or information "leads to a recovery of . . . any duties withheld, or . . . any fine, penalty, or forfeiture of property incurred."  19 U.S.C. § 1619.[11]

---

[11]     (1) any person who is not an employee or officer of the United States—

(A)  detects and seizes any vessel, vehicle, aircraft, merchandise, or baggage
      subject to seizure and forfeiture under the customs laws or the navigation
      laws and reports such detection and seizure to a customs officer, or
(B)  furnishes to a United States attorney, the Secretary of the Treasury, or
      any customs officer original information concerning—

      (i) any fraud upon the customs revenue, or
      (ii)any violation of the customs laws or the navigation laws which is being,
          or has been, perpetrated or contemplated by any other person; and

(2) such detection and seizure or such information leads to a recovery of—

(A)  any duties withheld, or
(B)  any fine, penalty, or forfeiture of property incurred;

The Federal Circuit has held that Section 1619 mandates money "when a claimant [has] met the statutory conditions." *Doe v. United States*, 100 F.3d 1576, 1580 (Fed. Cir. 1996) (internal citations omitted). This construction incentivizes "persons with information useful to law enforcement to cooperate with the authorities." *Id.* Otherwise, "[a]n informer would have little incentive to give original information upon occasions at considerable personal risk to officers of the United States if his compensation rested in the absolute discretion, almost one might say, in the whim, of an executive officer." *Id.* (alterations in original) (citing *Wilson v. United States*, 135 F.2d 1005, 1009 (3d Cir. 1943)).

Plaintiff's invocation of this statute without more does not confer jurisdiction on this Court. For this Court to have jurisdiction over a claim under Section 1619, a plaintiff must make at least some minimal connection between the requirements of Section 1619 and plaintiff's allegations. *See Hicks v. United States*, 118 Fed. Cl. 76, 82–83 (2014) (finding the Court lacked jurisdiction where the "[s]tatutes that provide rewards for informants and whistleblowers"—including Section 1619—"are plainly inapposite to [plaintiff] and the facts of his case"). Here, the facts plead are "plainly inapposite" as they do not come close to meeting the two requirements of Section 1619. *See Doe*, 100 F.3d at 1580; *Hicks*, 118 Fed. Cl. at 82–83. Therefore, this Court lacks jurisdiction over Plaintiff's claim under Section 1619.

Courts may dismiss a case for lack of subject matter jurisdiction if the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Moden v. United States*, 404 F.3d 1335,

---

the Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered.

19 U.S.C. § 1619(a).

1341 (Fed. Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

Plaintiff's claim under Section 1619 is such a claim.  As discussed below, the Seattle Port Police

are a local law enforcement entity.  *See Beesla v. Port of Seattle Police*, No. C21-1155, 2021 WL

4124251, at *1 (W.D. Wash. Sept. 9, 2021).  Thus, the alleged seizure was undertaken under state

law, which could not fall under Section 1619, which mandates a seizure under federal customs

laws.  19 U.S.C. §§ 1619(a), (b)(ii).  Similarly, this Court lacks jurisdiction over state law claims.

*Mitchell*, 463 U.S. at 215–18 (describing 28 U.S.C. § 1491 as limiting the jurisdiction of this Court

to monetary claims founded upon the U.S. Constitution, federal statutes or regulations, or federal

contracts); *Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1308 (Fed. Cir. 2007) ("Claims

founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal

Claims."); Compl. Ex. 1 at 43 (noting that "[t]he Port of Seattle asserts the property is subject to

seizure and forfeiture under [the Revised Code of Washington] 69.50.505(l)(g)" and "[t]he Port of

Seattle has the burden to prove . . . that the property is subject to forfeiture under Washington State

law").  Altogether, the Court lacks jurisdiction under Section 1619 because the facts plead are

"plainly inapposite" to the facts of the case and Plaintiff has not "asserted nonfrivolous claims."

*See Moden*, 404 F.3d at 1340–41 (quoting *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 687–88

(Fed. Cir. 1992)); *Hicks*, 118 Fed. Cl. at 82–83.

Plaintiff appears to cite Section 1619 "solely for the purpose of obtaining jurisdiction."

*Moden*, 404 F.3d at 1341 (citing *Steel Co.*, 523 U.S. at 89); Sur-Reply at 17–18 (citing Report from

R. Hunter, U.S. Gov't Account. Off, to G. Beasley, Dep't of Just. Com. Lit. Branch, dated Mar. 4,

1985, https://www.gao.gov/products/b-217636) ("Money mandating statute required for subject

matter jurisdiction . . . was successfully overcome by federal statute 19 U.S.C. Sec. 1619 and the

opinion of the DOJ general counsel validates that this statute is 'money mandatory.'").  In *Steel*

*Co*, the Supreme Court noted that federal courts lack jurisdiction where a plaintiff's claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction." *Steel Co.*, 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).  That is the case here.  Indeed, Plaintiff passingly asserts Section 1619 for the first time in his Sur-Reply, divorced from any facts of his case.  *See* Sur-Reply at 17–22.  There is nothing in his complaint that is remotely tied to Section 1619.  As such, Plaintiff's reliance on Section 1619 appears to be "solely for the purpose of obtaining jurisdiction," and such a passing reference to the statute in his Sur-Reply does not confer jurisdiction on this Court.  *Steel Co.*, 523 U.S. at 89 (quoting *Bell*, 327 U.S. at 682–83).

In his Sur-Reply, Plaintiff next references Section 1402 of the Affordable Care Act (ACA), 42 U.S.C. § 18071 to assert jurisdiction.  Sur-Reply at 22.  Plaintiff relies on *Montana Health Co-Op v. United States*, 139 Fed. Cl. 213 (2018), which, he claims, concluded that Section 1402 of the ACA is money-mandating.  *Id.*  Section 1402 is a "cost-sharing reduction (CSR) requirement imposed on issuers of certain qualified health plans," which is irrelevant to any facts plead or relief sought by Plaintiff, who is not a "health insurance issuer" as defined in the ACA.  *Montana Health*, 139 Fed. Cl. at 215; *see* 42 U.S.C. § 18111 (indicating that definitions contained in 42 U.S.C. § 300gg-91 apply to the ACA unless defined elsewhere); 42 U.S.C. § 300gg-91 (defining health insurance issuer as "an insurance company, insurance service, or insurance organization . . . which is licensed to engage in the business of insurance in a State and which is subject to State law which regulates insurance").  So, while Plaintiff references a money-mandating statute in his Sur-Reply, merely mentioning Section 1402 alone is insufficient to grant the Court jurisdiction over this case where none of Plaintiff's claims relate to the ACA and Plaintiff is not a health insurance issuer. *See Moden*, 404 F.3d at 1341 (citing *Steel Co.*, 523 U.S. at 89).

II.     **This Court Lacks Jurisdiction to Hear Claims Stemming from the Four Incidents Cited in Plaintiff's Complaint Because the Claims Are Not Directed at the United States.**

The incidents discussed in Plaintiff's Complaint and accompanying filings allege wrongdoing by state actors and private parties. *See generally* Compl.; Compl. Ex. 1. Although the United States is named as defendant in the case caption, Plaintiff's claims are not directed at the United States in substance. Further, even if the claims could be construed against the United States, this Court lacks jurisdiction.

A.      **This Court Lacks Jurisdiction over Claims Directed at New York State Administrative Agencies and Private Parties.**

Plaintiff alleges "[h]ome mortgage [f]raud" for a "[h]ome purchased in 2004" in Staten Island. Compl. Ex. 1 at 1, 19–30. Along with the home mortgage fraud claim, he appears to include claims for "tax lien title transfer fraud, . . . home sale forced closing, title company fraud and $800,000 [e]quity stolen from sale for fraudulent theft of equity by NYS DOF and other NY agencies." *Id.* at 1. This claim is substantively directed at private parties and state actors.

Plaintiff alleges fraud "by the NYS DOF and other NY agencies." Compl. Ex. 1 at 1. In support, Plaintiff attaches an exhibit of a foreclosure by a private party. *Id.* at 1, 19–30. These claims are substantively asserted against the mentioned New York administrative agencies and potentially the private parties to the foreclosure proceedings, not against the United States. Because Plaintiff's claims are not directed at the federal government, this Court lacks jurisdiction. *Sherwood*, 312 U.S. at 588 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Cooper*, 771 F. App'x at 1000.

Even if Plaintiff's claims were properly lodged against the United States, this Court would still lack jurisdiction over any fraud claims. *See Brown*, 105 F.3d at 623 (citing *L'Enfant Plaza*

*Props., Inc. v. United States*, 227 Ct. Cl. 1, 10–11 (1981) ("Because [plaintiffs'] complaints . . . are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims.")); *Richardson*, 2024 WL 1193418, at *4 (citing *Ullman v. United States*, 151 F. App'x 941, 945 (Fed. Cir. 2005)) ("[T]his Court lacks jurisdiction over fraud claims."); *Kupersmit v. United States*, No. 18-1839T, 2019 WL 1569791, at *3 (Fed. Cl. Apr. 11, 2019) ("[T]he Court of Federal Claims lacks jurisdiction over claims of fraud and deceit because such claims sound in tort.").  Plaintiff's multiple fraud claims, including those alleging mortgage fraud, tax lien title fraud, title company fraud, and theft of equity fraud fail whether construed as criminal fraud or civil fraud.  Compl. Ex. 1 at 1.  If construed as criminal fraud, these claims must be dismissed because this Court lacks jurisdiction over criminal matters.  *Joshua*, 17 F.3d at 379–80; *Stephens*, 165 Fed. Cl. at 349–50.  Construed as civil fraud, these claims sound in tort and, therefore, fail to confer jurisdiction on this Court.  *Brown*, 105 F.3d at 623; *Lea v. United States*, 592 F. App'x 930, 933 (Fed. Cir. 2014).

Even if this Court were to construe Plaintiff's claim liberally as a Fifth Amendment taking, there is no government action properly alleged that would entitle Plaintiff to compensation.  To succeed on such a Fifth Amendment claim, a plaintiff must identify a "government action" entitling him to compensation.  *Kalos v. United States*, 368 F. App'x 127, 130–31 (Fed. Cir. 2010) (first citing *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1381–82 (Fed. Cir. 2008); and then citing *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005)).  Here, a private party foreclosed upon Plaintiff's property.  *See* Compl. Ex. 1 at 19–30 (listing Plaintiff in foreclosure proceedings as Nationstar Mortgage LLC).  Even if governmental action were involved, Plaintiff alleges action by the New York state government, not the federal government.  *See id.* at 1, 19–30.  Indeed, a Fifth Amendment takings claim against New York would need to be brought under the Fourteenth Amendment, which this Court could not hear because, again, such

a claim is lodged against the state government, not against the United States.  *See Souders*, 497 F.3d at 1308; *see* Compl. Ex. 1 at 1 (alleging bad acts by "NYS DOF and other NY agencies"); *id.* at 19–30 (attaching filings from New York State foreclosure proceedings).

Accordingly, this Court lacks jurisdiction to hear the claims stemming from the New York bankruptcy.

**B.    This Court Lacks Jurisdiction over Claims Directed at Oregon and the State Liquor and Cannabis Commission.**

Plaintiff next alleges administrative fraud, including "[a]gency administrative hearings color of law fraud," which led to "[f]orfeiture of [business] licenses."  Compl. Ex. 1 at 1.  Plaintiff also alleges fraudulent transfer of at least one of the licenses.  *Id.* at 2.  These claims are directed at administrative proceedings conducted by the State of Oregon Office of Administrative Hearings for the Oregon Liquor and Cannabis Commission, not the United States.  *Id.* at 31–37.  While Plaintiff's Complaint references "US agency 'color of law' fraud," in substance, this claim relates to action taken by an Oregon state administrative agency.  *Id.* at 1–2 (describing forfeited licenses and referencing Oregon administrative proceedings related to the licenses); *id.* at 31–37 (attaching filings from Oregon administrative proceedings).  Therefore, this Court lacks jurisdiction because Plaintiff's claim is not against the United States.  *Sherwood*, 312 U.S. at 588; *Cooper*, 771 F. App'x at 1000 (finding this Court lacks jurisdiction over claim that "in substance does not appear to allege any involvement of the federal government in the events it describes").

Even if the claim were properly directed at the United States, Plaintiff's Complaint alleges fraud, which, as noted, this Court lacks jurisdiction to hear.  Compl. Ex. 1 at 1; *see Brown*, 105 F.3d at 623; *Joshua*, 17 F.3d at 379–80.  To the extent that Plaintiff's claim could be construed as a Due Process claim, such a claim still falls outside the scope of this Court's limited jurisdiction as it is well settled that the Due Process Clauses of the Fifth and Fourteenth Amendments are not

money-mandating in nature. *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013); *see, e.g.*, Compl. at 4; Compl. Ex. 1 at 1. Likewise, the Court could not consider this claim even if construed as a Fifth Amendment taking because the state of Oregon was responsible for the alleged taking. *See Souders*, 497 F.3d at 1308; Compl. Ex. 1 at 1–2, 31–37. Accordingly, this Court lacks jurisdiction over Plaintiff's claims related to the Oregon business licenses.

### C.     This Court Lacks Jurisdiction Over Claims Directed at the Commonwealth of Kentucky and Its State Officers.

The Court must also dismiss the claims related to Plaintiff's Kentucky arrest for lack of jurisdiction because the claims are directed at the Commonwealth of Kentucky and its State Officers. *Sherwood*, 312 U.S. at 588; *Cooper*, 771 F. App'x at 1000. Plaintiff's claims relate to a traffic stop, arrest, and seizure of personal property in Kentucky. *See* Compl. Ex. 1 at 2, 38–39.

This Court lacks jurisdiction over Plaintiff's Kentucky arrest claims for the same reason as his other claims: the claims allege no action by the United States Government. Rather, Plaintiff seeks redress for actions taken by Kentucky State Police and other Kentucky state actors. *Id.* at 2 (alleging violation of rights by "US Agency COMMONWEALTH OF KENTUCKY"). As this Court only has jurisdiction over claims against the United States, and the Commonwealth of Kentucky is not a United States agency, this Court cannot hear any of the claims related to Plaintiff's Kentucky arrest. *Sherwood*, 312 U.S. at 588; *Jones*, 440 F. App'x at 918.

Attempting to invoke jurisdiction for this claim, Plaintiff levies a myriad of constitutional and statutory claims related to this arrest. Compl. at 3–4 (listing violations); Compl. Ex. 1 at 2 (listing "deprivation of enalianable [sic] rights, under the US Constitutional [sic] . . . and US Code[,] specifically title 18 and others listed"). Specifically, Plaintiff alleges "unlawful imprisonment;" "[i]llegal misrepresentation by foreign agent BAR (British Accreditation Registrar);" violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; the Ex

Post Facto clause of Article I of the Constitution; Section 1-201 of the Uniform Probate Code; Kentucky Revised Statute § 418.005; and over twenty federal statutes across nine chapters of the United States Code.  Compl. at 3–4, Compl. Ex. 1 at 2; Sur-Reply at 7.

Even if Plaintiff had properly asserted his claims related to the Kentucky arrest against the United States (which he did not), the constitutional Amendments invoked are not money-mandating and accordingly cannot confer jurisdiction on this Court.  *See Kenyon v. United States*, 683 F. App'x 945, 948 (Fed. Cir. 2017) (internal citations omitted).  Specifically, Plaintiff alleges, without reference to supportive facts, violations of nearly every right guaranteed by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.  Compl. at 4.  However, it is well established that this Court "lacks jurisdiction over claims based on the Fourth, Sixth, and Eighth Amendments, as well as the Due Process clauses of the Fifth and Fourteenth Amendments because they are not 'money-mandating.'"  *Kenyon*, 683 F. App'x at 948 (citing *Brown*, 105 F.3d at 623 ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over such a violation."); *Dupre v. United States*, 229 Ct. Cl. 706, 706 (1981) ("[T]he [F]ourth and [S]ixth [A]mendments do not in themselves obligate the United States to pay money damages; and, therefore, we have no jurisdiction over such claims."); *Trafny v. United States*, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'"); *LeBlanc*, 50 F.3d at 1028 (The "Due Process Clauses of the Fifth and Fourteenth Amendments" are not "a sufficient basis for jurisdiction because they do not mandate payment of money by the government")).

Plaintiff also claims that the Kentucky Police's actions violated the Ex Post Facto Clause of Article I of the Constitution.  Compl. at 4; U.S. CONST. art. I, § 9, cl. 3.  It is well established

that the Ex Post Facto clause also is not money-mandating.  *Atlas Corp. v. United States*, 15 Cl. Ct. 681, 691 (1988).  Accordingly, this Court lacks jurisdiction over the alleged constitutional violations.

Plaintiff further attaches a "[f]ee schedule" listing additional proposed damages.[12] Executor Letter at 4–5, 66–68.  According to Plaintiff's filings, the "damages" listed on the fee

---

[12]  The fee schedule attached to the Executor Letter cites several statutory and regulatory authorities.  *See* Executor Letter at 66–68.  None are money-mandating.  Most of the statutes are from Title 18, over which this Court lacks jurisdiction.  *See id.*; *Lisa Richardson-Henderson Tr.*, 2024 WL 3688527, at *8 (internal citations omitted); *see also Jones*, 440 F. App'x at 918.

The fee schedule next cites 28 U.S.C. § 3002(15), 42 U.S.C. § 1986, and 42 U.S.C. § 1994, which are not money-mandating.  *See Thompson v. United States*, No. 23-cv-1933, 2024 WL 795181, at *5 (Fed. Cl. Feb. 26, 2024) (citing *Allen v. United States*, No. 23-776, 2023 WL 3862563, at *3 (Fed. Cl. June 7, 2023)) (concluding that 28 U.S.C. § 3002 "does not mandate the payment of money damages"); *Searles v. United States*, 88 Fed. Cl. 801, 804 (2009) (concluding that this court lacks jurisdiction to hear claims under the Civil Rights Act, Title 42, because original jurisdiction is vested in federal district courts).  The fee schedule also cites 26 U.S.C. § 7701(a)(1), which is a definitional provision of the Internal Revenue Code; definitional provisions are plainly not money-mandating.  *See Thompson*, 2024 WL 795181, at *5 (finding definitional provision to not be money-mandating).

Like the cited statutes, none of the cited regulations are money-mandating.  22 C.F.R. § 13.3, which has been repealed, imposed personal, monetary, and criminal liability for neglect of duty by "consular officer[s]."  22 C.F.R. § 13.3; s*ee also* 79 Fed. Reg. 43246 (July 25, 2014).  Not only do none of Plaintiff's claims relate to consular officers, but the regulation imposes the duty to pay on consular officers, not on the United States.  22 C.F.R. § 13.3.  Citation to 25 C.F.R. § 11.417 similarly misses the mark, as this is a regulation governing the crime of extortion in the "Courts of Indian Offenses."  25 C.F.R. § 11.417.  This Court lacks jurisdiction over criminal offenses and nothing in Plaintiff's Complaint relates to Indian law.  *Jones*, 440 F. App'x at 918.  32 C.F.R. § 536.77(1)(3)(vii) was promulgated under the Military Claims Act, 10 U.S.C. § 2731, *et seq.*, which is not money-mandating.  *See Rakowitz v. United States*, 490 F. App'x 345, 347 (Fed. Cir. 2012).  Finally, 42 C.F.R. § 488.301 is a definition provision in a regulation related to the survey and certification of long-term Medicare and Medicaid facilities.  42 C.F.R. § 488.301.  These definitions are plainly not money-mandating.  *See Thompson*, 2024 WL 795181, at *5.

Finally, the fee schedule cites "Title 15" in relation to a fine for "ARMED EXTORTION OF RIGHTS."  The Court is unclear to what this citation references, but the action alleged—armed extortion of rights—appears to be a crime, which would be governed by the criminal code in Title 18, over which this Court lacks jurisdiction.  *Jones*, 440 F. App'x at 918.

schedule were, "in part," "determined BY THE GOVERNMENT ITSELF." *Id.* at 66.  Moreover, Plaintiff claims that immunity is invalid under 42 U.S.C. § 1983 and other statutes, and that these purported "[v]iolations of law are legally unassailable due to precedents (violations of law) established by court cases." *Id.* at 68.  Plaintiff fails to note against whom and for what these fees are levied.  *See id.* at 4–5, 66–68.  The claims in the fee schedule relate most closely to Plaintiff's constitutional claims and references, which appear to relate back to the alleged actions of Kentucky police, prosecutors, or other state actors during his Kentucky arrest.  *See id.* at 4–5 (including fines for "charges DENIED PROPER WARRANT(S)," "charge ARMED VIOLATION OF DUE PROCESS," "DENIED PROVISIONS IN THE CONSTITUTION," and "UNLAWFUL INCARCERATION"); Compl. Ex. 1 at 2 (referencing deprivation of rights "under the US Constitution[] specifically the bill of right's [sic] and US Code specifically title 18 and others listed" with Kentucky arrest claim).  Further, Plaintiff's Kentucky arrest claim alleged "[i]llegal misrepresentation by foreign agent BAR" and the fee schedule includes a fine for "ACTING AS AGENTS OF FOREIGN PRINCIPLES" [sic].  Compl. Ex. 1 at 2; Executor Letter at 5.  Moreover, the longer fee schedule attached to the Executor Letter references immunity for these claims under Section 1983.  Executor Letter at 68.  Therefore, this Court construes these claims as Section 1983 claims against the Kentucky state actors, whom Plaintiff contends violated his constitutional rights during his arrest.

This Court lacks jurisdiction over Section 1983 actions because Section 1983 "does not create a right against the federal government for money damages, but is instead a damages remedy against persons acting under the color of *state* law." *Ganaway v. United States*, 557 F. App'x 948, 949 (Fed. Cir. 2014) (emphasis in original) (internal citations and quotation marks omitted); *see Shearin*, 992 F.2d at 1197 ("It is well settled that the United States Court of Federal Claims lacks

. . . jurisdiction to entertain tort claims.").  Indeed, this Court lacks jurisdiction over Plaintiff's

Section 1983 claim because jurisdiction for such claims rests with the district courts.  28 U.S.C.

§ 1343(a)(4); *Shelden v. United States*, 742 F. App'x 496, 501 (Fed. Cir. 2018).  Even construed

as a *Bivens* claim rather than a Section 1983 action, this Court would still lack jurisdiction because

*Bivens* created a private right of action against "federal *officials* acting under color of authority

who have violated the individual's constitutional rights."  *Frank's Livestock & Poultry Farm, Inc.*

*v. United States*, 17 Cl. Ct. 601, 606–07 (1989), *aff'd*, 905 F.2d 1515 (Fed. Cir. 1990) (emphasis

added).  This Court's jurisdiction, however, "involves claims against the United States, not federal

officials."  *Id.* (citing 28 U.S.C. § 1491).  Therefore, this Court lacks jurisdiction over any of

Plaintiff's claims brought against state or federal officers.

Plaintiff also alleges unlawful imprisonment, which appears related to the alleged

constitutional violations discussed above and, therefore, to the Kentucky arrest.  *See* Compl. Ex. 1

at 2 (referencing deprivation of rights "under the US Constitution[] specifically the bill of right's

[sic] and US Code specifically title 18 and others listed" with Kentucky arrest claim).  Because

this Court lacks jurisdiction to hear a claim for unjust conviction or imprisonment by a state, it

cannot hear Plaintiff's claim for false imprisonment by Kentucky.[13]  *Machulas v. United States*,

621 F. App'x 629, 631–32 (Fed. Cir. 2015).  Finally, to the extent any of the claims included on

---

[13] Even if the claim is not related to the Kentucky arrest, this Court generally lacks jurisdiction over claims for unlawful imprisonments or confinement, except in specific circumstances involving, for example, where a conviction has been reversed.  *Cochran v. United States*, 250 F.3d 754 (Fed. Cir. 2000) (table); *see also Barber v. United States*, 636 F. App'x 1009, 1010 (Fed. Cir. 2016) ("[Plaintiff's] unlawful imprisonment claim also does not establish jurisdiction because recovery in the Claims Court for false imprisonment requires a conviction and subsequent reversal or pardon . . . .").  Because Plaintiff does not allege that his conviction was reversed or that he was pardoned, this Court lacks jurisdiction to hear this claim.  *Barber*, 646 F. App'x at 1010 (affirming dismissal of case for lack of jurisdiction where plaintiff failed to plead "a conviction and subsequent reversal or pardon").

plaintiff's fee schedule or in his pleadings—including the claim for false imprisonment—could be construed as torts, this Court plainly lacks jurisdiction over such claims.  28 U.S.C. § 1491(a)(1); *Shearin*, 992 F.2d at 1197.

Plaintiff next points to a series of statutes that he contends were violated in connection with the Kentucky arrest.  Compl. Ex. 1 at 2; Compl. at 4.  None provide this Court with jurisdiction. *First*, Plaintiff cites 12 U.S.C. § 1821, a provision of the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq.*  Compl. at 4.  Section 1821 vests jurisdiction in district courts, not in this Court. *See* 12 U.S.C. § 1821(c)(7), 6(d)(A)(ii), (f)(4).   *Second*, Plaintiff cites two provisions of the Securities Act of 1933.  *See* Compl. at 4 (citing 15 U.S.C. § 77ww[w]; 15 U.S.C. § 77xxx). However, this Court lacks jurisdiction over claims involving securities violations. *Taylor v. United States*, 168 Fed. Cl. 696, 704–05 (2023).

*Third*, Plaintiff relies on eleven criminal statutes within Title 18.  Compl. at 4; Sur-Reply at 7; *see* Compl. Ex. 1 at 2 (noting violation of "specifically title 18" in relation to Kentucky arrest). Plaintiff cites 18 U.S.C. § 8 (obligation or other security of the United States defined); 18 U.S.C. § 241 (conspiracy against rights); 18 U.S.C. § 242 (deprivation of rights under color of law); 18 U.S.C. § 245(b)(2) (federally protected activities); 18 U.S.C. § 514 (fictitious obligations); 18 U.S.C. § 872 (extortion by officers or employees of the United States); 18 U.S.C. §§ 891–94 (extortionate credit transactions); 18 U.S.C. § 31[14] (release and detention authority generally). Compl. at 4; Sur-Reply at 7.  It is well established, however, that "this Court lacks jurisdiction over the cited provisions of Title 18 because they are criminal statutes."  *Lisa Richardson-Henderson Tr.*, 2024 WL 3688527, at *8; *see also Jones*, 440 F. App'x at 918 ("[T]he [Court of Federal Claims] correctly stated that it has no jurisdiction over criminal matters generally.").

*Fourth*, Plaintiff cites the definitions provision of the Foreign Agents Registration Act (FARA).  Compl. at 4 (citing 22 U.S.C. § 611).  "FARA requires any 'agent of a foreign principal' to register with the Department of Justice."  *Att'y Gen. of U.S. v. Wynn*, 104 F.4th 348, 351 (D.C. Cir. 2024) (quoting 22 U.S.C. § 612(a)).  The government enforces FARA by seeking injunctions to prevent violation or compel compliance or through criminal prosecution of violations.  *Id.* (citing 22 U.S.C. § 618(a), (f)).  FARA does not permit private enforcement.  *See Mosafer, Inc. v. Broidy*, No. 22-55296, 2023 WL 8295921, at *2 (9th Cir. Dec. 1, 2023); *accord Comm. for a Free Namibia v. S.W. Afr. People's Org.*, 554 F. Supp. 722, 725 (D.D.C. 1982).  Therefore, this Court lacks jurisdiction because the statute does not create a private right enforceable against the federal government for money and because the statute contemplates criminal enforcement.  *See LeBlanc*, 50 F.3d at 1028; *Jones*, 440 F. App'x at 918.

Plaintiff's citations to FARA appear to relate to his claim of "[i]llegal misrepresentation by foreign agent BAR."  Compl. Ex. 1 at 2.  This Court lacks jurisdiction to hear such a claim against a foreign agent, even if construed more broadly than under FARA, because the Court cannot hear claims "against others than the United States."  *Sherwood*, 312 U.S. at 588.  Plaintiff has merely named the United States a defendant for a claim against a private party, and as such the claim "is plainly beyond the jurisdiction of the Claims Court."  *Beauvais*, 2024 WL 2860170, at *1; *see Lisa Richardson-Henderson Tr.*, 2024 WL 3688527, at *7.  Additionally, even if this claim were properly directed at the United States, "[f]raudulent misrepresentation is a claim sounding in tort, over which this court has no jurisdiction."  *Harris v. United States*, No. 18-293C, 2018 WL 2996277, at *2 (Fed. Cl. June 15, 2018).

*Fifth*, Plaintiff's Sur-Reply unavailingly cites four additional statutes not previously discussed.  Sur-Reply at 7.  Plaintiff cites 11 U.S.C. § 727, which relates to discharge in Chapter

Seven bankruptcy and 31 U.S.C. § 3130, which requires the Secretary of the Treasury to submit an annual public debt report to Congress.  *Id.*  Neither statute relates to any facts plead nor does either "expressly create[] a substantive right enforceable against the federal government for money damages."  *See LeBlanc*, 50 F.3d at 1028 (citing *Testan*, 424 U.S. at 398).  Next, he cites 29 U.S.C. § 1109, which describes liability for fiduciary responsibilities under ERISA and is not a money-mandating statute.  Sur-Reply at 7; *see Raven v. United States*, No. 16-1682C, 2017 WL 2445159, at *1 (Fed. Cl. June 5, 2017) (noting that 19 U.S.C. § 1109 is not a money-mandating statute). Plaintiff also cites the definition section of the Federal Tort Claims Act, 28 U.S.C. § 2671, however, as noted previously, "[i]t is well settled that the United States Court of Federal Claims lacks . . . jurisdiction to entertain tort claims."  *Shearin*, 992 F.2d at 1197 (rejecting Plaintiff's attempt to sustain a claim under 28 U.S.C. § 2671).

*Finally*, Plaintiff cites a subrogation provision of the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq*. (OPA).  Compl. at 4 (citing 33 U.S.C. § 2715).  The OPA, however, "does *not* create a right of action for suits against the United States."  *Savage Servs. Corp. v. United States*, 25 F.4th 925, 938 (11th Cir. 2022) (emphasis in original); *see also Rick Franklin Corp. v. U.S. Dep't of Homeland Sec.*, No. 06-1647-SU, 2008 WL 337978, at *3 (D. Or. Feb. 4, 2008) ("The OPA does not contain a waiver of the government's sovereign immunity from suit.").

Even construed as a Fifth Amendment taking, Plaintiff's claims related to the arrest and subsequent seizure of property fail because the Kentucky government, not the federal government was responsible for the alleged taking.  Compl. Ex. 1 at 2 (indicating violation of rights by "US Agency COMMONWEALTH OF KENTUCKY"); *id.* at 38–39 (showing seizure of property by Kentucky State Police).  A claim against Kentucky would need to be brought under the Fourteenth

Amendment, which this Court would be unable to hear because such a claim is against the state government, not against the United States.  *See Souders*, 497 F.3d at 1308.

Even if the Court had jurisdiction over these claims, the Court could not enter Plaintiff's requested relief to "instruct Kentucky Attorney General to Order the COMMONWEALTH OF KENTUCKY LYON COUNTY to dismiss all charges with prejudice."  Compl. Ex. 1 at 2.  This Court cannot dismiss or review criminal charges.  *See Reyna v. United States*, No. 22-798, 2022 WL 17346196, at *4–5 (Fed. Cl. Nov. 30, 2022); *Townsend v. United States*, No. 16-1424C, 2016 WL 7030745, at *3–4 (Fed. Cl. Dec. 1, 2016).   Plaintiff also cites Kentucky Revised Statute § 418.005, which provides for declaratory judgments in Kentucky courts.  *See* Compl. at 3 (citing KY. REV. STAT. § 418.005).  However, this is a state law, and it is axiomatic that this Court lacks jurisdiction to hear claims founded on state law; all claims in this Court must be brought against the United States.  28 U.S.C. § 1491 (granting jurisdiction only for claims founded "upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . .");  *see Sherwood*, 312 U.S. at 588; *Souders*, 497 F.3d at 1307 (citing 28 U.S.C. § 1491(a)(1)) ("Claims founded on state law are also outside the scope of the limited jurisdiction of the Court of Federal Claims.");  *see also Noll v. United States*, No. 2024 WL 3517627, at *2 (Fed. Cir. July 24, 2024) (citing *Souders*, 497 F.3d at 1307) (rejecting state law claims as outside of this Court's jurisdiction).

Accordingly, this Court cannot exercise jurisdiction over any of Plaintiff's claims related to the Kentucky arrest.

### D.     This Court Lacks Jurisdiction over the Claim Against the Port of Seattle Police.

Plaintiff alleges an unlawful seizure of property by the Port of Seattle Police.  Compl. Ex. 1 at 2.  Plaintiff seeks the return of $43,950 that was seized from Mariah Alliano on February 15,

2022.  *Id.* at 2, 43–44.  Plaintiff's name appears as a party on the "Administrative Forfeiture Proceedings for the Port of Seattle Police Department," but nothing in Plaintiff's filings explain his interest in the money seized from a third party.  *Id.*

This allegation fails to invoke this Court's jurisdiction because, aside from the potential standing issues involved, the claim is not directed at the United States but rather at the Port of Seattle Police Department in substance.  *See id.* at 2 (alleging an "[u]nlawful seizure of property by PORT POLICE OF SEATTLE AIRPORT"); *id.* at 43–44 (attaching "Notice of Hearing" in "Administrative Forfeiture Proceedings for the Port of Seattle Police Department").  Plaintiff alleges no action by the federal government.

The Port of Seattle Police Department is a local, state government entity.  *See Beesla*, 2021 WL 4124251, at *1 (declining jurisdiction for Federal Tort Claims Act suit because the Port of Seattle Police is a "local government entity" and the FTCA only permits suits "against the United States").  As noted, this Court only has jurisdiction to hear claims against the United States, not against state or local entities.  *See Sherwood*, 312 U.S. at 588; *Cooper*, 771 F. App'x at 1000.  Accordingly, as Plaintiff's claim is, in substance, directed toward a local agency, not the United States, and is founded in state law, this Court lacks jurisdiction.

This claim would also fail if construed as a Fifth Amendment taking.  Takings by a state entity, such as the alleged taking by the Seattle Port Police here, are governed under the Fourteenth Amendment.  *Souders*, 497 F.3d at 1308; Compl. Ex. 1 at 2 (claiming "[u]nlawful seizure of property by PORT POLICE OF SEATTLE AIRPORT").  This Court, however, cannot hear a taking claim under the Fourteenth Amendment because the proper defendant is the state itself.  *Souders*, 497 F.3d at 1308.

Plaintiff's allegations also include a passing reference to "commercial admiralty maritime jurisdiction." Compl. Ex. 1 at 2. Regardless of how a claim for an unlawful seizure would invoke maritime jurisdiction, "[t]he law is well-settled that this [C]ourt does not have jurisdiction to hear claims arising in admiralty" because 28 U.S.C. § 1333 vests district courts with maritime jurisdiction. *Kemp v. United States*, 124 Fed. Cl. 387, 393 (2015); 28 U.S.C. § 1333(1).

Accordingly, this Court lacks jurisdiction over Plaintiff's claims arising from the Seattle Port Police's alleged seizure of money.

**III.     This Court Lacks Jurisdiction over Plaintiff's Miscellaneous Remaining Claims.**

Beyond the four main incidents that Plaintiff describes in his Complaint, Plaintiff also makes passing references to miscellaneous causes of action or potential remedies. Plaintiff appears to advance multiple sovereign citizen claims, many of which relate to purported trusts, over which this Court lacks jurisdiction. *See, e.g.*, *Walby*, 957 F.3d at 1297, 1302; *Potter*, 161 Fed. Cl. at 29. Further, Plaintiff appears to assert claims for copyright infringement, identity theft, discrimination, misrepresentation, and breach of contracts. *See* Compl. at 3. Finally, Plaintiff requests pain and suffering damages, on the basis of "sweet equity . . . and over 40 years of physical, mental and psychological damages." Resp. at 1; *see also* Compl. Ex. 1 at 2 (including pain and suffering in relief section of Complaint). The Court lacks jurisdiction over all of these claims.

**A.     This Court Lacks Jurisdiction over Any Sovereign Citizen Claims.**

This Court lacks jurisdiction over sovereign citizen claims, generally. *See Walby*, 957 F.3d at 1297, 1302; *Potter*, 161 Fed. Cl. at 29; *Lisa Richardson-Henderson Tr.*, 2024 WL 3688527, at *9–10; *Robinson v. United States*, No. 24-166, slip op. at 10–13 (Fed. Cl. Sept. 17, 2024), ECF No. 37. Plaintiff's filings contain many arguments typical of claims premised on the sovereign citizen theory. For example, Plaintiff repeatedly distinguishes between his name, and other terms, written in all capital letters versus capitalization of just the initial letters. Resp. at 5–6 ("The

motion to dismiss expressing reference to plaintiff as 'pro sei [sic] plaintiff', Henry Doiban and

Mr. Doiban.  The plaintiff on the claim is HENRY DOIBAN, the subject matter.  Whom is the

motion referencing, the plaintiff, resident, individual, natural person or executor and beneficiary

of the estate (the lawful party)?"); Sur-Reply at 32 ("The motion to dismiss expressing reference

to plaintiff as 'pro sei [sic] plaintiff', Henry Doiban and Mr. Doiban.  The plaintiff on the claim is

HENRY DOIBAN, the RES-ID-ENTity aka the subject matter.  The plaintiff on the claim is Estate

of HENRY DOIBAN Public Trust, the subject matter."); Resp. at 5 (claiming difference between

"the United States," as listed in Defendant's Motion to Dismiss and "THE UNITED STATES" as

listed in the case caption); *see Fanelli v. United States*, 146 Fed. Cl. 462, 464 n.2 (2020) (citing

*Bey v. State*, 847 F.3d 559, 560–61 (7th Cir. 2017)); *Potter*, 161 Fed. Cl. at 29.  Further, Plaintiff

repeatedly references trusts or, more specifically, a "cestui que vie" trust, and appears to assert

trust-related claims.  *See, e.g.*, Compl. at 3 (asserting "Trust Fraud," "Breach of fiduciary

responsibilities, breach of Trust, [and] Identity Theft."); Executor Letter at 14–17 (citing history

of cestui que vie trusts); Sur-Reply at 32 ("The plaintiff on the claim is Estate of HENRY DOIBAN

Public Trust, the subject matter."); Sur-Reply at 59 (referring to self as "[e]xecutor to the [Estate]"

and referencing other trust terms); *see Potter*, 161 Fed. Cl. at 28–29 (noting that sovereign citizens

often reference trusts, specifically "cestui que vie" trusts).  This Court lacks jurisdiction over "the

legal fiction presented by plaintiff," which is "not based in law," but on arguments common to

"the sovereign citizen movement."[14]  *Potter*, 161 Fed. Cl. at 29.

---

[14] Moreover, to the extent Plaintiff's trust claims are not barred as a sovereign citizen claim, this
Court lacks jurisdiction over such trust and fiduciary-related claims because they sound in tort.
Compl. at 3;  Executor Letter at 3, 6; Sur-Reply at 14–15, 25–26; 28 U.S.C. § 1491(a)(1); *Cox v.
United States*, 105 Fed. Cl. 213, 218 (2012) (breach of fiduciary duty); *Brown*, 105 F.3d at 623
(fraud); *Joshua*, 17 F.3d at 379–80 (fraud); *Krukowski v. United States*, 129 Fed. Cl. 440, 443
(2016) (identity theft); *see also Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1296 (Fed.
Cir. 2022) (quoting *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015)) (noting that

Accordingly, this Court lacks jurisdiction over all of Plaintiff's sovereign citizen claims as they both fail to invoke this Court's proper jurisdiction and are frivolous.

**B.      This Court Lacks Jurisdiction Over Plaintiff's Copyright Claims.**

In his "Statement of the Claim," Plaintiff briefly lists "copyright infringement" as one of the purportedly unlawful actions committed by "United States agencies."  Compl. at 3.  The reference cites attachments on pages five through ten of Plaintiff's Complaint.  *Id.*  However, those pages of the Complaint do not further allege or support the reference to copyright infringement.[15] *Id.* at 5–10; *see also generally* Compl.; Compl. Ex. 1.  Except for statutory exceptions which are inapplicable in this case, registration of a copyright with the United States Copyright Office is required to bring a claim for copyright infringement.  *See* 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) (holding that copyright registration is a nonjurisdictional precondition to suit).  Thus, to invoke this Court's jurisdiction for copyright infringement, a plaintiff "must establish that the copyright is registered in accordance with the relevant provisions of the Copyright Act or the Copyright Office has refused to register the copyright." *Jennette v. United States*, 77 Fed. Cl. 126, 131–32 (2007) (citing 17 U.S.C. § 411(a)); *see also* 17 U.S.C. § 411(a) (explaining that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title").  While this Court has jurisdiction over copyright claims in certain circumstances, other judges of the Court of Federal Claims have also dismissed copyright infringement claims for lack of subject matter jurisdiction where a plaintiff did not allege

---

the Government can only be liable in damages for breaches of its fiduciary duty if a plaintiff demonstrates a fiduciary duty "specifically accept[ed] by statute or regulation").

[15] This bare copyright assertion also appears to be a common claim by sovereign citizen plaintiffs. *Potter*, 161 Fed. Cl. at 29; *see Lisa Richardson-Henderson Tr.*, 2024 WL 3688527, at *11; *Miles v. United States*, Nos. 14-416C, 2014 WL 5020574, at *2–3 (Fed. Cl. Oct. 6, 2014).

that the plaintiff had registered for or been denied a copyright.  *See Redmond v. United States*, No. 22-60C, 2022 WL 301811, at *5 (Fed. Cl. Feb. 1, 2022); *Gonzalez v. United States*, No. 21-1381C, 2021 WL 2350006, at *3 n.3 (Fed. Cl. June 8, 2021) (citing *Jennette*, 77 Fed. Cl. at 131); *Dell v. United States*, No. 20-500C, 2020 WL 4876247, at *2 (Fed. Cl. Aug. 20, 2020) (citing *Jennette*, 77 Fed. Cl. at 131).

This Court lacks jurisdiction over Plaintiff's copyright claim because he does not "establish that the copyright is registered in accordance with the relevant provisions of the Copyright Act or the Copyright Office has refused to register the copyright."  *See Jennette*, 77 Fed. Cl. at 131–32 (citing 17 U.S.C. § 411(a)).  To support his copyright claim, Plaintiff attaches a UCC filing, two business licenses, and an "affidavit of truth."  Compl. at 5–10.  None of these demonstrate, even under the most liberal construction, that Plaintiff possess a valid copyright.  *See Lisa Richardson-Henderson Tr.*, 2024 WL 3688527, at *11 (dismissing copyright claim for lack of jurisdiction where plaintiff's only proof of copyright was a UCC financing statement and common law copyright notice).  Accordingly, this Court lacks jurisdiction over the claim.

### C.    This Court Lacks Jurisdiction over Plaintiff's Breach of Contracts Claim Because Plaintiff Never Alleges Any Contract with the United States.

Plaintiff references "breach of contracts" once in his Complaint, but he never raises the issue again and never alleges any actual contracts with the United States—either express or implied.  Compl. at 3; *see also generally* Compl.; Compl. Ex. 1.  While the Court has jurisdiction over express and implied-in-fact contracts, the Court lacks jurisdiction over claims that plaintiffs fail to plausibly allege a contract.  *See Trauma Serv. Grp.*, 104 F.3d at 1325 ("To show jurisdiction in the Court of Federal Claims, [plaintiff] must show that either an express or implied-in-fact contract underlies its claim."); *Starrett*, 2023 WL 152827, at *4 (affirming dismissal under Rule

12(b)(1) where plaintiff failed to allege a money mandating statute or plausibly allege the existence of a contract).

Plaintiff has not alleged any elements of a contract with the government.  *See Suess v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008) (citations omitted) ("The requirements for a contract between the United States and a private party are (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity in offer and acceptance, and (4) authority on the part of the government agent entering the contract.").  Plaintiff makes only one, brief reference to a breach of contract and provides no support for any element of a contract.  *See id.*; Compl. at 3.  Plaintiff need not prove these elements at the motion to dismiss phase, "[b]ut a complaint must do more than 'tender[] naked assertions devoid of further factual enhancement.'"  *Richardson v. United States*, No. 23-1365 C, 2023 WL 8798072, at *2 (Fed. Cl. Dec. 19, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (dismissing breach of contract claim under Rule 12(b)(1) where Plaintiff failed to plead any facts to support claim in complaint).  Therefore, because Plaintiff "does not plausibly allege the existence of an express or implied contract with the United States, [this] Court lack[s] subject-matter jurisdiction over the case."  *Starrett*, 2023 WL 152827, at *4; *see Trauma Serv. Grp.*, 104 F.3d at 1325.  Accordingly, this Court lacks jurisdiction over any purported breach of contract claim.

### D.    This Court Lacks Jurisdiction to Grant Pain and Suffering Damages or Equitable Relief.

Plaintiff also requests "[d]amages for pain and suffering by the actions of the[] STATE." Compl. Ex. 1 at 2.  Plaintiff describes his claim as one for "sweet equity . . . and over 40 years of physical, mental and psychological damages."  Resp. at 1.  Such a claim does not confer jurisdiction on this Court.

Construing the claim broadly as requesting relief from purported state-imposed torts, this Court lacks jurisdiction over torts, including intentional or negligent infliction of emotional distress, and is unable to award any pain and suffering damages for tort claims. *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998); *see also White v. United States*, 101 Fed. Cl. 673, 678 (2011) (internal citations omitted) ("Pain and suffering damages are a tort remedy, however, and this Court does not possess jurisdiction over tort claims.").

As noted, Plaintiff has failed to point to any applicable money-mandating statute or a contract with the Government for this Court to exercise jurisdiction. *Supra* Section II. Therefore, this Court cannot grant damages where it lacks jurisdiction to hear the merits of the case. *See Mitchell*, 463 U.S. at 216. To the extent Plaintiff is lodging a claim for equitable relief, this Court similarly lacks jurisdiction. Resp. at 1 (describing claim as one for "sweet equity"); Executor Letter at 5 (requesting "[e]quitable relief for monetary sweet equity"); Sur-Reply at 27–28 (using heading "Equitable relief" before restating claims related to New York bankruptcy, Oregon business licenses, Kentucky arrest, and Seattle seizure). Indeed, it is well established that this Court lacks jurisdiction to provide equitable relief, except in a narrowly defined exception to the Tucker Act's prohibition on equitable relief for pre-award bid protest actions. *See, e.g.*, *Kanemoto v. Reno*, 41 F.3d 641, 644–45 (Fed. Cir. 1994) (citing 28 U.S.C. § 1491(a)(3) (granting the Court of Federal Claims injunctive power in pre-award bid protest cases)); *Robinson*, No. 24-166, slip op. at 19; *see also Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("[T]he Court of Federal Claims does not possess general equity jurisdiction . . . ."). That exception is not applicable here as this case is not a bid protest. *Kanemoto*, 41 F.3d at 644–45; *see generally* Compl.; Compl. Ex. 1.

Finally, the request for damages is directed at "the[] STATE," which, as evidenced by Plaintiff's claims, means a state or its actors and not the federal government.  Compl. Ex. 1 at 2. Indeed, if Plaintiff seeks pain and suffering stemming from the incidents listed above, that request seeks damages for state actors, not from the United States.  This Court cannot consider such a request based on actions by state actors because it has jurisdiction only over claims against the United States.  *Sherwood*, 312 U.S. at 588; *Jones*, 440 F. App'x at 918.  Accordingly, the Court must dismiss Plaintiff's claims for pain and suffering damages.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 6) pursuant to Rules 12(b)(1) and 12(h)(3).  Accordingly, Plaintiff's Complaint is dismissed without leave to replead and Plaintiff's Motion for Declaratory Judgment, ECF No. 16, is **DENIED** as moot.  The Clerk of Court is **DIRECTED** to enter Judgment accordingly.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

Dated: October 15, 2024
Washington, D.C.